IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JODIE D. WILLIAMS, ) | |
| ) | |
| Petitioner, ) | Case No. CV 01-330-S-LMB |
| ) | |
| v. ) | |
| ) | MEMORANDUM DECISION |
| JO ANNE B. BARNHART,[1] ) | AND ORDER |
| Commissioner of Social Security, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

On June 20, 2002, the Court entered a Memorandum Decision and Order granting Jodie D. Williams' Petition for Review and remanding this action for further proceedings pursuant to sentence six of 42 U.S.C. § 405(g) to allow the Administrative Law Judge (ALJ) to assess the extent of Petitioner's mental impairments during the time period for which benefits are sought. (Docket No. 18).  The Court exercised its discretion not to award benefits at that time and concluded that ALJ Robert K. Rogers' January 18, 2000 Decision focused on Petitioner's lack of credibility, but failed to adequately address and develop the record on the issue of Petitioner's alleged mental impairments as they may relate to disability.  The Court also stated it would address the issue of Petitioner's credibility following the ALJ's  determination on remand.

In an Order dated October 10, 2002, the Appeals Council remanded this matter to the ALJ for further development of the record.  (Tr. 512.)  A hearing was held before ALJ Robert L. Henrie on January 7, 2003, at which time James Grissom, CRC, a vocational expert, and Rose

---

[1]Petitioner originally named Larry G. Massanari, Acting Commissioner of Social Security, as Respondent in this action.  However, Jo Anne B. Barnhart became the Commissioner of Social Security on November 9, 2001.

MEMORANDUM DECISION AND ORDER - 1

Holbrook, Petitioner's mother, testified. (Tr. 410-465.) Debra Young Irish represented Petitioner at the hearing.

On August 12, 2003, ALJ Henrie issued a Decision Upon Remand concluding that Petitioner was not disabled within the meaning of the Social Security Act during the time period at issue. (Tr. 389-400.)

On November 4, 2003, Respondent filed a Notice of Filing Supplemental Administrative Record (Docket No. 19), after which the Court allowed the parties to submit briefing regarding those issues addressed in the June 20, 2002 Order, specifically whether on remand the ALJ properly supported his findings that Petitioner's impairments were insufficient to meet the requirements for disability, and whether the rejection of Petitioner's allegations for lack of credibility is properly supported. The time period at issue here is the closed period of disability claimed by Petitioner from August 23, 1997 to January 18, 2000.

This matter has now been fully briefed and is ready for review. The Court will not restate herein the background information and analysis contained in the June 20, 2002 Memorandum Decision and Order but will address only those issues now before the Court.

## I.

### STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish entitlement to disability benefits. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999). The standard of review is whether the decision of the Commissioner is supported by substantial evidence and is based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710 (9th Cir. 1981). In other words, if there is substantial evidence to support the decision of the ALJ, the decision must be upheld even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. and Welfare,* 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusion of the ALJ. *Richardson,* 402 U.S. at 401. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984), and drawing inferences logically flowing from the evidence. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial in nature and should be construed liberally and "not so as to withhold benefits in marginal cases." *Smith*, 820 F.2d at 1095 (citations omitted).

The issue presented in the instant appeal is whether the Administrative Law Judge's finding that Petitioner was not disabled is supported by substantial evidence, including that relevant to mental health, and whether it is based on application of proper legal standards.

## II.

## ANALYSIS

**A.    Petitioner's Mental Impairments**

In the June 20, 2002 Order, the Court concluded that the record contains sufficient evidence to support ALJ Rogers' January 18, 2002 Decision rejecting the treating physicians' opinions of Petitioner's physical impairments as based largely on her subjective complaints. *Order*, p. 9 (Docket No. 18). The Court stated that notwithstanding the ALJ's findings with respect to Petitioner's alleged physical disabilities, it appears that the ALJ implicitly rejected Petitioner's alleged mental impairments. *Id.* The Court ruled that the ALJ did not adequately address the physicians' concerns as to Petitioner's mental impairments nor the equivocations in

their findings. *Id*. at 10.  The Court refrained from awarding benefits at that time because "there may be evidence in the record to which the ALJ can point to provide the requisite specific and legitimate reasons for disregarding the treating physician's opinion as to Petitioner's mental impairments." *Id.* at 10-11.

In addition, the Court stated that it recognized the ALJ has an independent "duty to fully and fairly develop the record and to assure that the Claimant's interests are considered." *Id.* at 9. Further,

> The ALJ's *duty to develop the record is also heightened where the Claimant may be mentally ill* and thus unable to protect her own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."

*Id.* at 10.  As such, the Court remanded the instant action "for further proceedings to assess the extent of Petitioner's mental impairments during the time period for which benefits are sought."[2] *Id*.

In evaluating the evidence presented at an administrative hearing, the ALJ must follow the sequential process in determining whether a person is disabled within the meaning of the Act.

---

[2]  Petitioner's Supplemental Brief asserts that the grounds for remand were that the ALJ failed to properly support his rejection of the opinions of treating physicians relating to Petitioner's mental impairments.  This attempts to shift the analysis away from the existence of mental impairments adequate to qualify for disability to the standards for rejecting the opinion of a treating physician.  In the 2002 Order, the Court expressly allowed the ALJ's rejection of the opinion of a treating physician.  *Order* at 8 (Docket No. 18).

In the Decision on Remand, ALJ Henrie expressly rejects Dr. Corzine's diagnosis given on September 23, 1999 because the diagnosis is not supported by the record nor the clinical notes.  (Tr. 396; *see also* Tr. 291-311, 743).  The ALJ may reject the opinion only with "specific legitimate reasons for doing so that are based on substantial evidence in the record."  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  ALJ Henrie did just this.  His review of the record relies specifically on at least eighteen medical visits with no less than six different care-givers and includes a specific section detailing the rationale for rejecting Dr. Corzine's diagnosis.  (Tr. 393-394, 396.)  ALJ Henrie thoroughly assesses the extent of Petitioner's mental impairments during the time period at issue and cites proper foundation for rejecting the opinion of one of the several treating physicians and mental health experts while doing so.  The decision is supported by substantial, competent evidence and, as such, the ALJ's rejection of the diagnosis of Dr. Corzine is affirmed.

MEMORANDUM DECISION AND ORDER - 5

20 C.F.R. §§404.1520, 416.920 (1997).  Both the January 18, 2000 Decision and the August 12, 2003 Decision on Remand use the sequential process as the framework for their analysis. (Tr.14-23, 389-400.) The June 20, 2002 Order explains and addresses the physical limitations considered in the ALJ's Decision in the sequential process.  *Order*, p. 6 (Docket No. 18).

The Court's analysis at this time is limited to the points relevant to mental impairments addressed in the August 12, 2003 Decision Upon Remand sequential process, and does not revisit the physical limitations addressed in the January 18, 2000 Decision.

The first step in the sequential process requires the ALJ to determine whether Petitioner is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  ALJ Henrie found that Petitioner has not engaged in substantial gainful activity during the closed period at issue in his August 12, 2003 Decision Upon Remand without direct reference to physical or mental limitations.  (Tr. 390.)

The second step requires the ALJ to determine whether Petitioner has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c).  ALJ Henrie concluded that Petitioner suffers from severe mental impairments, including anxiety related disorders, a major depressive disorder, dissociative amnesia, a dissociative disorder NOS, and a personality disorder NOS with borderline features.  (Tr. 391.)

The third step is to determine if Petitioner has an impairment or combination of impairments that meet or equal those listed in Appendix 1 Subpart P, Regulations Nos. 4 and 16. The Listing of Impairments require that Petitioner establish at least two of the following severity ("B" criteria) requirements: marked restriction of activities of daily living; marked difficulties maintaining social functioning; marked difficulties maintaining concentration, persistence, or

pace; or repeated episodes of decompensation, each of extended duration. (Tr. 391.) 20 C.F.R. Part 404, Subpt. P, App. 1 §§ 12.04(B). Based on the medical evidence in the record concerning Petitioner's mental impairment during the relevant time period and considering the testimony at the hearing, ALJ Henrie concluded that Petitioner's degree of limitation in activities of daily living is mild, that Petitioner has moderate difficulty in maintaining social contact (second area), and moderate limitations of concentration, persistence and pace (third area). In the fourth area, ALJ Henrie found that Petitioner has exhibited only one or two episodes of decompensation, each of extended duration. ALJ Henrie found that Petitioner's impairments do not meet or equal any listing of impairments under §§12.04(B) for Affective Disorders. (Tr. 392.)

Another means of overcoming the severity of impairments test within the third sequential step is by showing that the disorder lasted more than two years and caused more than a minimal limitation of ability to do basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and at least one of several regulatory limitations. 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04(C). ALJ Henrie again found that the written evidence and the credible testimony do not meet these criteria. (Tr. 392.)

The ALJ must also consider whether Petitioner has shown that the asserted symptoms result in a complete inability to function independently outside the area of one's home. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.06. ALJ Henrie found that the written evidence and credible testimony do not demonstrate symptoms resulting in complete inability to function independently outside the area of Petitioner's home. (Tr. 392.) ALJ Henrie did not find Petitioner's impairments meet or equal any listing under Appendix 1, Subpart P, Regulations Nos. 4 and 16, as required to award benefits for the period in question. Specific support for

these conclusions is rendered by ALJ Henrie within the review of the medical record in the fourth step as stated herein directly below. *Id.*

Within the fourth step of the sequential process, ALJ Henrie reviewed Petitioner's medical history in detail and concluded that the medical record does not contain any opinions from treating or examining physicians indicating that Petitioner was disabled or that she had limitations greater than those determined in his decision during the relevant time period. (Tr. 394.) In so doing, he specifically addressed mental health impairments throughout the analysis by citing whether or not, and to what extent, each treating or examining physician noted any mental health issues for every medical or mental health treatment procured by Petitioner between September 1997 and February 2000. This included analysis of at least eighteen (18) different examinations and meetings with no less than six (6) doctors and counselors during the period in question. ALJ Henrie specifically referred to the inconsistency in Petitioner's medical files, the lack of assertions of mental illness, reports that she was "doing fairly well" at that time, repeated assertions from treating doctors that Petitioner was uncooperative and the resulting invalidity of tests, effective medicinal treatment of the alleged disabling mental illness, questionable credibility, and testimony at the hearing that asserted an inability to recall any mental impairments during the period in question. (Tr. 393-395.)

ALJ Henrie also noted in the fourth step that at the oral hearing Petitioner and her mother testified that Petitioner's problems during the time period at issue were mainly physical, in that she suffered from diabetes mellitus and high blood sugar. (Tr. 394.) Petitioner also testified that she had no specific recollections or memory regarding her impairments for the time period at

issue.  *Id*.  This lack of specificity led ALJ Henrie to conclude that the testimony was not competent enough to overcome the inadequate medical evidence.  (Tr. 395.)

Upon reviewing both the physical and mental health reports as well as the testimony offered, ALJ Henrie concluded that adequate support for a finding of disability under the fourth step was not offered.  (Tr. 393-394.)  ALJ Henrie's conclusion at this stage is consistent with the opinions of the State agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process.  (Tr. 397; *see also* Tr. 175-192, 215-231.)

ALJ Henrie found in the fifth step that Petitioner's impairments reduced her residual functional capacity to performance of a limited range of unskilled, sedentary work, of which a significant number of jobs exist in the national economy.  This conclusion was based on the testimony of a vocational expert and Medical Vocational Rule 201.25 and, according to the ALJ, does not support a finding of disability.  (Tr. 398.)

Based upon all of the foregoing, ALJ Henrie concluded that Petitioner's impairments are severe but not to the point of finding that Petitioner is under a "disability" as defined in the Social Security Act during the relevant time period at issue.  (Tr. 399-400.)

The Court finds that the conclusions reached by ALJ Henrie are supported by substantial evidence and based upon proper legal standards.  ALJ Henrie cites relevant evidence that a reasonable mind might accept as adequate to support his judgment, and therefore supports his conclusion with substantial evidence.  *Richardson*, 402 U.S. at 401.  The Court has reviewed the record as a whole and determines that it contains factual evidence that allows a reasonable mind to accept the conclusion of ALJ Henrie.  *Id*.  Considering that Petitioner did not testify

specifically to any mental health limitations during the relevant period, that there is a repetitive pattern of suspect behavior in the medical record, and different treating and examining physicians reached different conclusions, it is reasonable to accept ALJ Henrie's conclusion that Petitioner was not disabled during the relevant time period based on the record as a whole. Although there is conflicting factual evidence potentially susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457.

ALJ Henrie's decision is based upon the proper legal standard, used the correct standards within the sequential process, and is entitled to deference because of its reasonable basis in the law.  *Matney*, 981 F.2d at 1019.  While Petitioner asserts that ALJ Henrie commits legal error by ignoring the opinions of two doctors who examined her after the closed period, the opinions are merely "relevant," not controlling, and ALJ Henrie did not ignore their reports.  The authority cited by Petitioner, *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988), states that "reports containing observations made after the period for disability are relevant to assess claimant's disability."  ALJ Henrie reviewed the new diagnoses, and stated that "the new medical evidence submitted regarding the mental aspect of claimant's allegations is very minimal...[and] lacking in establishing a disability in this case."  (Tr. 395.)  Further, while Petitioner asserts that the latter opinions are from treating physicians, one is merely a "Review Technique Form" (Tr. 368) executed for the specific purpose of Social Security disability evaluation, and the other appears to be limited to an advisory purpose (Tr. 362) ("would suggest tapering Wellbutrin and trying [other drugs]" and  "would continue the counseling at this time." (Tr. 364)).  The Court holds that ALJ Henrie did not commit legal error by choosing to follow the Review Technique Forms

executed during the period of disability in question (Tr. 175, 215) and not following that done after the close of the period (Tr. 368).  Further, the Court holds that the rejection of the advisory diagnosis offered after the close of the period in question by Dr. Moorhouse, even if considered that of a treating or examining physician, is adequately countered by specific and legitimate reasons supported by substantial evidence in the record.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  ALJ Henrie cited the contemporaneous medical records from the closed period in question which expressly stated that Petitioner was not disabled to counter the newly introduced medical evidence.  (Tr. 397; *see also* Tr. 175-192, 215-231.)

The Court also concludes that ALJ Henrie has fulfilled his duty to develop the record in an appropriate inquiry based on the assertion of mental illness.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  ALJ Henrie executed a thorough analysis of the medical record with particular attention given to mental health issues.  In response to the ambiguity in both the record and Petitioner's testimony, the Court finds that ALJ Henrie has fully and fairly developed the record in a manner which considers Petitioner's interests.

The Court affirms the finding of ALJ Henrie that although Petitioner alleges having severe mental problems during the period at issue, the evidence of record, as well as the testimony presented at the hearing, indicates that Petitioner's primary problems were physical, not mental, and that such physical impairments were not disabling.

### B. Petitioner's Credibility

In the June 2002 Order, the Court declined to address Petitioner's argument that ALJ Rogers inappropriately rejected her testimony for lack of credibility.  The Court stated this issue would be addressed when the action was again before it following the ALJ's determination on

MEMORANDUM DECISION AND ORDER - 11

remand.  *Order*, p. 11 (Docket No. 18).  Both ALJ Rogers and ALJ Henrie expressly questioned Petitioner's credibility.

Generally, an ALJ may not reject a petitioner's statements regarding their limitations merely because they are not supported by objective evidence.  *Tonapetyan*, 242 F.3d at 1147.  Neither may the ALJ rely on his own observations of a petitioner at the hearing as the sole reason for rejecting their complaints.  *Id*. at 1148.  In determining whether a petitioner's subjective testimony regarding the severity of his/her symptoms is credible, "the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [claimant's] testimony and [his/her] conduct, [claimant's] daily activities, [claimant's] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains."  *Light v. Soc. Security Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  Further, the Ninth Circuit has held that "the ALJ may reject the claimant's testimony regarding the severity of [his/her] symptoms only if he makes specific findings stating clear and convincing reasons for doing so," and he "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  *See also Tonapetyan*, 242 F.3d at 1148.  However, the ALJ is in the best position to make such credibility decisions and, for this reason, the ALJ's credibility determinations are entitled to great weight.  *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  Resolution of conflicts in the testimony and of credibility questions is a function solely of the ALJ.  *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).

Whether characterized as a credibility issue, or whether the rejection of excess pain testimony is authorized, the Ninth Circuit uses a similar standard:  "[i]n order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision" and "[t]hese findings must enable the ALJ to 'convincingly justify his rejection' of the claimant's excess pain testimony."  *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989) (citations omitted).  The Court in *Fair* recognized that "while it is not entirely clear what sorts of findings meet this requirement," testimony about a petitioner's daily activities or a failure to seek treatment or follow a prescribed course of treatment would be an acceptable form of evidence.  *Id.*

ALJ Rogers catalogued a wide array of specific and convincing reasons for questioning the credibility of Petitioner in the January 2000 Decision and outlined a sustained pattern of suspect behavior directly related to credibility in the medical record.  (Tr. 15-21.)  During a psychological evaluation in April of 1998, the interviewer said there was some question regarding the authenticity of Petitioner's responses.  Dr. Bergstrom noted in the fall of 1998 that Petitioner's depression had greatly improved with the use of prescribed medication, and confirmed Petitioner had not manifested any psychotic behavior or other significant symptoms suggesting a major thought disorder.  (Tr. 16.)  On September 16, 1999, Petitioner was seen by Dr. Alan Han for a consultative neurological examination.  Dr. Han reported that during the examination process, Petitioner was uncooperative, provided a poor effort throughout the examination, and described Petitioner's complaints as predominantly subjective in nature.  Dr. Han emphasized that the extent and severity of Petitioner's weakness and neuropathy could not be accurately determined due to Petitioner's lack of adequate effort.  (Tr. 17.)  On October 5, 1999, Petitioner attended a consultative psychiatric examination with Dr. James Read, Ph.D.

who concluded that the test results were simply not consistent with the presentation of Petitioner during the examination. Dr. Read stated that Petitioner appeared not to have put forth a full effort while completing the test, noting that his interview with Petitioner was made difficult because of a lack of cooperation. (Tr. 18.)

ALJ Rogers found that the culmination of Petitioner's questionable behavior occurred during the September 1999 and October 1999 examinations with Dr. Han and Dr. Read. (Tr. 20.) ALJ Rogers referred to Petitioner's lack of effort and cooperation and indicated that due to such, Dr. Han could not accurately determine the extent and degree of Petitioner's impairment. ALJ Rogers specifically noted that while Dr. Han found Petitioner to be limited to less than a full range of sedentary work, it is clear from his medical report that this assessment was based solely on Petitioner's subjective complaints, which Dr. Han suspected to be false. (Tr. 21.) When Petitioner was seen for evaluation by Dr. Read, ALJ Rogers characterized Petitioner as doing "her utmost to invalidate the results of the examination." (Tr. 21.) Petitioner endorsed every neurovegetative symptom suggested by Dr. Read, and provided results on the test that were patently un-interpretable due to invalid validity scales and the extreme degree of pathology suggested by the test scores. Despite no history of cognitive deficits or organicity, and although she has a GED equivalent high school education, Petitioner attempted to convince Dr. Read that she is an imbecile. (Tr. 21.)

At the first administrative hearing before ALJ Rogers, Petitioner stated she had been bothered by occasional blackouts, but then indicated she has no recollection of these episodes. She said she may be suffering from a seizure disorder but then admitted that MRI scans and EEG testing have all been normal. (Tr. 18.) She then catalogued an extensive list of asserted

MEMORANDUM DECISION AND ORDER - 14

maladies.  (Tr. 19.)  Testimony at that hearing was also taken from a social worker, Crystal Christensen, in support of Petitioner's assertions.  While Petitioner argues that ALJ Rogers did not specifically cite rationale for the rejection of her testimony, in fact, the ALJ expressly found on the record directly following the discussion of Ms. Christensen that "the testimony provided at the hearing regarding extent and effect of the claimant's impairments [is] exaggerated and not supported by objective medical evidence."[3]  (Tr. 7.)

ALJ Rogers expressly found the testimony of Petitioner and Ms. Christensen regarding the extent and effect of Petitioner's impairments to be exaggerated and not supported by objective medical evidence.  (Tr. 20.)  To support this ruling, ALJ Rogers relied on the facts noted above that medical reports indicate on a number of occasions Petitioner confounded her treating physicians with responses during examinations and a general lack of cooperation.  *Id.*  ALJ Rogers specifically found that the treating and examining physicians' conclusions must be considered suspect because of this pattern of grossly exaggerated allegations from Petitioner.  (Tr. 21.)  The Court finds that ALJ Rogers' conclusion as to Petitioner's suspect credibility is supported by specific findings stating clear and convincing reasons.

ALJ Henrie also did not find Petitioner's functional allegations, and a conclusion of total disability, to be reasonably consistent with the objective medical evidence and non-medical evidence, when considered as a whole.  (Tr. 395.)  ALJ Henrie noted that in January 1998, Dr. Bergstrom reported that Petitioner made no mention of any particular mental impairment during an appointment, only referred to the diabetes mellitus, and told the doctor that she had few

---

[3] ALJ Henrie also reviewed Ms. Christensen's testimony in particular and finds it to be based on physical problems and "not supported by the objective medical evidence." (Tr. 395.) The Court rules sufficient the rationale offered by both ALJ Henrie and ALJ Rogers as adequately specifying the reason for rejecting the testimony of Ms. Christensen.

MEMORANDUM DECISION AND ORDER - 15

problems with such in the past 33 years. (Tr. 393.) In February 1998, Dr. Bergstrom reported that her blood sugars were within the normal range and Petitioner continued to report that she was doing fairly well. In March 1998, Dr. Bergstrom prescribed Zoloft, which resulted in Petitioner reporting some two months later that her depression had improved. At that latter date, Dr. Bergstrom diagnosed Petitioner with a history of depression with improvement. In July and August of 1998, Dr. Bergstrom noted that Zoloft was giving Petitioner "pretty good control over her depressive symptoms." It was also reported that her blood sugar had been doing fairly well. ALJ Henrie relied upon this diagnosis of improvement or stability in the August 2003 Decision on Remand to question the asserted disability. (Tr. 393.)

In September 1999, Petitioner underwent a neurological consultative examination with Dr. Han.[4] Though Petitioner reported at that time that she suffered from depression, irritability, and self mutilation, ALJ Henrie pointed out that Dr. Han only diagnosed Petitioner with diabetic peripheral neuropathy and no mental impairment. Further, Dr. Han stated plainly in every section of his assessment that there was no way to adequately determine any of the alleged maladies because of subjective reports from Petitioner. (Tr. 324.) The ALJ also noted that Dr. Read's examination in October 1999 involved Petitioner being not optimally motivated nor cooperative. (Tr. 394.)

ALJ Henrie further reported that at the hearing Petitioner testified she had no specific recollections or memory regarding her impairments for the time period at issue. She further stated that beyond caring for her pet during that period, she had no specific recollections of how she was doing during that time. Both Petitioner and her mother testified that her problems were

---

[4] Though ALJ Henrie misattributes this diagnosis to Dr. Profant, the substance of the report, and the inability to render an accurate assessment, is the relevant point.

MEMORANDUM DECISION AND ORDER - 16

mainly physical during said period. (Tr. 394.) ALJ Henrie stated that Petitioner's testimony cannot be considered competent enough in terms of specificity to overcome the lack of medical evidence in this case. (Tr. 395.)

Petitioner asserts that "the ALJ in this case essentially has rejected the allegations, testimony and opinions of everyone, including the opinions of Social Security's own examining consultants. The ALJ has substituted his own opinions for those of every treating and/or examining physician in the record." *Petitioner's Brief*, p. 10 (Docket No. 15). The Court does not agree. As stated above, there is a wide array of medical evidence that renders Petitioner's credibility suspect, and, as noted above, the State agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process found no disability. (Tr. 397; *see also* Tr. 175-192, 215-231.) Respondent more accurately argues that the ALJ justifiably rejected Petitioner's credibility based on Petitioner's behavior at prior examinations and at the hearing, noting that inconsistent statements and lack of cooperation during consultative examinations are adequate, clear, and convincing reasons for rejecting a Petitioner's testimony. *Respondent's Memorandum*, p. 6 (Docket No. 16).

The Court finds that ALJ Rogers and ALJ Henrie each list specific findings stating clear and convincing reasons for questioning Petitioner's credibility. They relate specifically alleged sources of disability to the treating and examining physicians by noting which diagnoses were suspect in the process. The ALJs were in the best position to make such credibility decisions and, for this reason, their credibility determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). Resolution of conflicts in the testimony and of credibility questions is a function solely of the ALJ. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir.

MEMORANDUM DECISION AND ORDER - 17

1988). Where, as here, the ALJ makes specific findings justifying a decision to discount and reject certain allegations made by Petitioner regarding symptoms and their functional effect on daily activities, and those findings are supported by substantial evidence in the record, the Court's role is not to second-guess that decision. The Court finds that the ALJ's decisions to reject Petitioner's credibility are sufficiently specific to allow the Court to conclude that the ALJ's decisions are based on permissible grounds and do not arbitrarily discredit Petitioner's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991).

### III.

### CONCLUSION

ALJ Henrie concluded that Petitioner was not under a disability as defined in the Social Security Act during the relevant time period at issue, August 23, 1997 through January 18, 2000. (Tr. 399.) ALJ Henrie concluded that during the relevant time period, Petitioner had the residual functional capacity to perform the full range of unskilled, light work, with certain limitations and that occupations exist in significant job numbers in the national economy which Petitioner was capable of performing during said period. (Tr. 398.)

Although there is some evidence tending to support Petitioner's position, Petitioner's primary contentions appear to be that the ALJ gave too much weight to the evidence upon which he relied and did not give enough weight to other evidence favorable to Petitioner. Petitioner argues that the record, when viewed as a whole, supports a conclusion that she was disabled within the meaning of the Act. However, the ALJ is the fact finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent on Behalf of Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is

susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.  The Court finds that the evidence upon which the ALJ relied can reasonably and rationally be relied upon to support his conclusion, despite the fact that such evidence may be susceptible to a different interpretation.

The Court concludes that the Commissioner's determination that Petitioner was not disabled during the relevant time period within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.  Accordingly, the Court will not substitute its interpretation or judgment for that of the ALJ in reaching his decision and the Commissioner's decision is upheld.

## IV.

## ORDER

Based on the foregoing, the decision of the Commissioner is affirmed and this action is dismissed in its entirety with prejudice.



DATED:  **June 1, 2005**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

MEMORANDUM DECISION AND ORDER - 19